**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors.[1] | PROMESA<br>Title III<br>No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br>No. 17-BK-4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY and PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY,<br><br>Plaintiffs,<br><br>-v-<br><br>LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC,<br><br>Defendants. | Adv. Proc. No. 25-00061-LTS<br>in 17-BK-4780-LTS |
| HON. JENNIFFER GONZÁLEZ, GOVERNOR OF PUERTO RICO, COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiffs,<br><br>-v- | Adv. Proc. No. 25-00062-LTS<br>in 17-BK-4780-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC,

Defendants.

**THE GOVERNOR OF PUERTO RICO AND COMMONWEALTH OF
PUERTO RICO'S AND THE PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY'S
<u>OBJECTION TO LUMA'S URGENT MOTION FOR STAY PENDING APPEAL</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .............................................................................................. 2

LEGAL ARGUMENT........................................................................................ 3

    I.     THE COURT SHOULD NOT STAY THE GOVERNOR'S ACTION .................. 4

        A.    LUMA is not entitled to a stay pending appeal of a non-appealable order  4

        B.    Setting aside Section 1447(d), LUMA has not shown that it is likely to succeed on the merits ................................................................................ 9

            1.    LUMA should be held to the "likely to succeed on the merits" standard because the Governor's Action does not present a "novel" and "serious" legal issue or "unusually severe" harm .................. 10

            2.    The Court properly remanded because the Governor's Action is an exercise of police and regulatory powers under PROMESA Section 306(d)(1) ........................................................................................ 12

                i.     The Governor's Action seeks to enforce generally applicable regulatory laws ................................................ 13

                ii.    The police powers exception does not have a temporal limitation .......................................................................... 14

            3.    The pending DACO Appeal does not enhance LUMA's likelihood of success ......................................................................... 16

        C.    LUMA will not be irreparably injured absent a stay ............................... 17

        D.    A stay will substantially injure the Government and harm the public interest................................................................................................. 18

    II.    THE COURT SHOULD NOT STAY THE P3A ACTION................................. 20

        A.    LUMA has not shown that it is likely to succeed on the merits ............... 20

        B.    LUMA will not be irreparably injured absent a stay ............................... 22

        C.    A stay will substantially injure P3A and harm the public interest............ 23

CONCLUSION................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acevedo-Garcia v. Vera-Monroig,*
296 F.3d 13 (1st Cir. 2002) .................................................................................. 10

*Asociación de Salud Primaria de P.R., Inc. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
330 F. Supp.3d 667 (D.P.R. 2018) ........................................................................ 22

*Autoridad de Energía Eléctrica v. Vitol S.A.,*
859 F.3d 140 (1st Cir. 2017) ............................................................................ 9, 24

*Baris v. Sulpicio Lines, Inc.,*
932 F.2d 1540 (5th Cir. 1991) ............................................................................... 7

*Bender v. Williamsport Area Sch. Dist.,*
475 U.S. 534 (1986) .............................................................................................. 9

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.,*
996 F.3d 37 (1st Cir. 2021) .................................................................................. 10

*Canterbury Liquors & Pantry v. Sullivan,*
999 F. Supp. 144 (D. Mass. 1998) ....................................................................... 11

*City & Cnty. of San Francisco v. PG&E Corp.,*
433 F.3d 1115 (9th Cir. 2006) ............................................................................... 8

*Concordia Partners, LLC v. Pick,*
790 F.3d 277 (1st Cir. 2015) ................................................................................. 9

*Cournoyer v. Town of Lincoln,*
790 F.2d 971 (1st Cir. 1986) ................................................................................ 15

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,*
638 F.3d 367 (1st Cir. 2011) ................................................................................ 21

*Ernewayn v. Home Depot U.S.A., Inc.,*
727 F.3d 369 (5th Cir. 2013) ................................................................................. 7

*Fayard v. Ne. Vehicle Servs., LLC,*
533 F.3d 42 (1st Cir. 2008) .................................................................................. 12

*Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
899 F.3d 13 (1st Cir. 2018) .................................................................................. 22

*Forry, Inc. v. Neundorfer, Inc.,*
837 F.2d 259 (6th Cir. 1988) ................................................................................ 19

*Forty Six Hundred LLC v. Cadence Educ., LLC,*
15 F.4th 70, (1st Cir. 2021) .................................................................................. 18

*Hall v. Hall,*
584 U.S. 59 (2018) ................................................................................................ 3

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Holbein v. TAW Enters., Inc.*,
   983 F.3d 1049 (8th Cir. 2020) ............................................................................. 7

*In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*,
   805 F.2d 440 (1st Cir. 1986) ............................................................................... 13

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   650 B.R. 296 (D.P.R. 2022) ................................................................................. 9

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   808 F. Supp. 3d 282 (D.P.R. 2025) ..................................................................... 3

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   919 F.3d 121 (1st Cir. 2019) ............................................................................ 6, 9

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   522 F. Supp. 2d 557 (S.D.N.Y. 2007) ............................................................ 6, 7

*Jagex Ltd. v. Impulse Software*,
   750 F. Supp.2d 228 (D. Mass. 2010) .................................................................. 19

*Johnson v. Fankell*,
   520 U.S. 911 (1997) ............................................................................................. 22

*Koken v. Reliance Grp. Holdings (In re Reliance Grp. Holdings, Inc.)*,
   273 B.R. 374 (Bankr. E.D. Pa. 2002) ................................................................. 15

*Kupperstein v. Schall (In re Kupperstein)*,
   994 F.3d 673 (1st Cir. 2021) ............................................................................... 15

*Longo En-Tech P.R., Inc. v. EPA*,
   2017 WL 878442 (D.P.R. Mar. 6, 2017) ............................................................ 19

*Luma Energy, LLC v. P.R. Elec. Power Auth. (In re Fin. Oversight & Mgmt. Bd. for
   P.R.)*,
   813 F. Supp. 3d 234 (D.P.R. 2025) ..................................................................... 22

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................................. 22

*Maine v. BP P.L.C.*,
   2026 WL 74096 (D. Me. Jan. 9, 2026) ...................................................... 3, 19, 20

*Maryland v. King*,
   567 U.S. 1301 (2012) ........................................................................................... 18

*Massachusetts v. Sohmer (In re Sohmer)*,
   388 B.R. 448 (D. Mass. 2008) ............................................................................. 8

*Mayor & City Council of Balt. v. BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2022) ................................................................................ 8

*Milk Indus. Regul. Off. of the Commonwealth of P.R. (In re Ruiz)*,
   122 F.4th 1 (1st Cir. 2024) ............................................................................ 12, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Missouri v. U.S. Bankr. Ct. for the E.D. of Ark.*,
647 F.2d 768 (8th Cir. 1981) .................................................................................. 14

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*,
287 F.3d 1 (1st Cir. 2002) ...................................................................................... 10

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................................... 3, 10, 18

*Orange Cnty. Water Dist. v. Unocal Corp.*,
584 F.3d 43 (2d Cir. 2009) ...................................................................................... 6

*Parkview Adventist Med. Ctr. v. United States*,
842 F.3d 757 (1st Cir. 2016) ............................................................................ 11, 14

*PREPA v. Vitol S.A. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
Adv. Pro. 17-00221-LTS (D.P.R. Feb. 12, 2019) .................................................. 24

*Rhode Island State Council of Churches v. Rollins*,
158 F.4th 304 (1st Cir. 2025) .................................................................................. 9

*Rhode Island v. Trump*,
155 F.4th 35 (1st Cir. 2025) ............................................................................... 3, 10

*Samaan v. St. Joseph Hosp.*,
670 F.3d 21 (1st Cir. 2012) ...................................................................................... 7

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) .................................................................................................. 9

*Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap., LLC*,
2024 WL 3384992 (D.P.R. July 11, 2024) ............................................................ 10

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995) ................................................................................. 1, 4, 5, 6, 7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ................................................................................................ 18

*Williams v. AFC Enters., Inc.*,
389 F.3d 1185 (11th Cir. 2004) ............................................................................... 6

*Zurich Am. Ins. Co. v. L.P.C.&D., Inc.*,
2026 WL 1229222 (D.P.R. May 5, 2026) ............................................................. 10

**Statutes**

11 U.S.C. § 362(b)(4) ..................................................................................... 11, 16

28 U.S.C. § 1332 ......................................................................................................... 3

28 U.S.C. § 1447(c) ......................................................................................... 5, 7, 8

28 U.S.C. § 1447(d) ........................................................................... 1, 4, 5, 6, 7, 8, 9, 18

28 U.S.C. § 1452 ......................................................................................................... 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1452(a) ........................................................................................................ 5

28 U.S.C. § 1452(b) ........................................................................................................ 6

PROMESA § 303 .............................................................................................................. 19

PROMESA § 306 ............................................................................................................... 5

PROMESA § 306(b) ......................................................................................................... 22

PROMESA § 306(d) ....................................................................................................... 5, 8

PROMESA § 306(d)(1) ....................................................... 1, 3, 4, 6, 11, 12, 15

PROMESA § 306(d)(2) ..................................................................................................... 6

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Government and P3A submit this objection to LUMA's *Urgent Motion for Stay of Order to Remand Pending Appeal and Request for Expedited Relief* [Case No. 25-00062, Dkt. No. 70 and Case No. 25-00061, Dkt. No. 51] (the "Motions") and respectfully state as follows:[2]

## PRELIMINARY STATEMENT

LUMA's motions for a stay pending appeal are the latest in a series of tactics designed to frustrate the Commonwealth's efforts to enforce Puerto Rico's public contracting laws.  Each day of delay harms the people of Puerto Rico, who are entitled to know whether LUMA's continued operation of their electrical grid rests on a valid legal foundation. LUMA has wholly failed to establish any entitlement to the requested relief; accordingly, the Motions should be denied.  As to the Governor's Action, LUMA has no right to appeal.  This Court remanded the Governor's Action because it falls within the police powers exception to PROMESA Section 306(d)(1), and under 28 U.S.C. § 1447(d) and the Supreme Court's decision in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995), that remand order is not reviewable on appeal.  Without an appealable order, there can be no stay pending appeal.  Moreover, because the Governor's Action will proceed in Commonwealth Court regardless, LUMA cannot show irreparable harm from litigating the identical issues in that forum.  The public interest strongly favors allowing the Commonwealth Court to resolve questions of Puerto Rico law without delay.  The Motions fail on every factor and should be denied.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Governor's Motion, Governor's Complaint, P3A Motion, P3A Complaint, Notice of Removal, and/or T&D OMA, as applicable. Unless otherwise noted, all emphasis is added and internal quotation marks have been omitted.  Citations to "Mot." refer collectively to the Motions as the Motions are identical in both cases.

1

**BACKGROUND**

1.      LUMA moves to stay two separate actions:  (i) Adv. Proc. No. 25-00061 (LTS) (the "P3A Action") and (ii) Adv. Proc. No. 25-00062 (LTS) (the "Governor's Action," together with the P3A Action, the "Actions").

2.      The P3A Action.  On December 11, 2025, P3A and PREPA filed a Complaint in Commonwealth Court seeking a declaration that the Extension Letter is null and void because it violated Act 120 and Act 29, including requirements for P3A Board authorization, PREB certification, legislative approval, and a defined contract term.  The complaint also sought a preliminary injunction directing LUMA to produce transition documents.  That same day, P3A and PREPA filed an intrajurisdictional certification with the Puerto Rico Supreme Court requesting immediate review under Rule 23, which permits the Puerto Rico Supreme Court to address novel legal issues that significantly and urgently affect the public interest.  On December 15, 2025, LUMA removed the P3A Action to this Court.

3.      The Governor's Action.  The issues in the P3A Action regarding the Extension Letter's validity substantially overlap those raised in a separate action filed by the Governor and the Commonwealth of Puerto Rico on December 16, 2025.  The Governor also filed an intrajurisdictional certification.  On December 18, 2025, LUMA removed the Governor's Action, and the Puerto Rico Supreme Court stayed the intrajurisdictional certification pending this Court's resolution of the removal.  In a resolution, several justices signaled the urgency with which the Puerto Rico Supreme Court views this matter and its intent to reassume jurisdiction should this Court remand.

4.      The Remand Decision.  On May 8, 2026, the Court issued its *Memorandum Order Granting Motions to Remand* in both Actions [Adv. Proc. No. 25-00062, Dkt. No. 68 and Adv. Proc. No. 25-00061, Dkt. No. 49] (the "Order").  Although the Court issued a single order

remanding both the Governor's Action and the P3A Action to the Commonwealth Court, it did not consolidate the cases and they continue to retain their separate identities. *See Hall v. Hall*, 584 U.S. 59, 77 (2018) (constituent cases retain separate identity unless consolidated for "all purposes"). As to the Governor's Action, this Court held that removal was unavailable under PROMESA Section 306(d)(1) because the Governor's Action was based on an exercise of police power under Puerto Rico law. As to the P3A Action, the Court held both that the police powers exception in Section 306(d)(1) of PROMESA foreclosed removal to the Title III Court and that diversity removal under 28 U.S.C. § 1332 was unavailable because the parties had agreed through a forum selection clause to litigate disputes arising from the T&D OMA in Commonwealth Court.

5. On May 13, 2026, LUMA appealed the Order in both Actions and filed the Motions seeking stays pending appeal.

## **LEGAL ARGUMENT**

6. A stay of an order pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and thus courts do not grant relief as "a matter of right." *Maine v. BP P.L.C.*, 2026 WL 74096, at *3 (D. Me. Jan. 9, 2026) (quoting *Rhode Island v. Trump*, 155 F.4th 35, 41 (1st Cir. 2025)). "In reviewing an application for a stay pending appeal, a court must consider the following four factors: (1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 808 F. Supp. 3d 282, 285 (D.P.R. 2025) (LTS). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

3

7.     LUMA cannot make the required showing in either Action.  As to the Governor's Action, a stay of this Court's remand order pending appeal is categorically unavailable because LUMA has no right to appeal that order.  In *Things Remembered*, the Supreme Court held that 28 U.S.C. § 1447(d) forecloses appellate review of remand orders based on defects in removal or lack of subject matter jurisdiction, including in cases arising under analogous provisions of the Bankruptcy Code.  516 U.S. at 127–28.  Regardless of whether LUMA's attempt to remove an action made unremovable by the police powers exception in PROMESA Section 306(d)(1) is characterized as a defect in removal or lack of subject matter jurisdiction, this Court's remand order is not appealable under *Things Remembered*.

8.     That also presents an insuperable problem for LUMA's application to stay this Court's remand of the P3A Action.  Given that the issues raised in both Actions are essentially the same, there is no point in a stay of the P3A Action pending appeal.  LUMA cannot show irreparable harm from its alleged inability to perfect its appeal rights in the P3A Action when litigation on the same issues will proceed in Commonwealth Court in the Governor's Action.  And even if LUMA were right that the P3A Action was improperly remanded, the public interest strongly disfavors identical litigation in different fora.  Puerto Rico is the ultimate expositor of Puerto Rico law, and the same issues raised in the P3A Action will be proceeding in Commonwealth Court.

9.     For these and the additional reasons detailed below, this Court should not issue a stay.

I.     **THE COURT SHOULD NOT STAY THE GOVERNOR'S ACTION.**

   A.     **LUMA is not entitled to a stay pending appeal of a non-appealable order.**

10.     The Court remanded the Governor's Action to the Commonwealth Court "because [it is] within the police or regulatory power exception to section 306(d)(1) of PROMESA, 48 U.S.C. § 2166(d)(1)."  Order at 3.  On the merits, this decision is entirely correct.  But the First

4

Circuit will never reach the merits because the Court's remand decision on this basis is non-reviewable under 28 U.S.C. § 1447(d) and the Supreme Court's decision in *Things Remembered*. Absent an appealable order, LUMA cannot obtain a stay pending appeal.[3]

11.     Section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," save for an inapplicable exception. 28 U.S.C. § 1447(d).  This prohibition on appellate review applies "not only to remand orders made in suits removed under [the general removal statute], but to orders of remand made in cases removed under *any other statutes*, as well[,]" including removals in bankruptcy cases. *Things Remembered*, 516 U.S. at 128–29 (alterations and emphasis in original).  And in *Things Remembered*, the Supreme Court held that "remands based on grounds specified in § 1447(c) are immune from [appellate] review" by virtue of "§ 1447(d)." *Id*. at 127.  Section 1447(c), in turn, covers "defect[s]" in removal, which must be raised within 30 days, and lack of subject matter jurisdiction. 28 U.S.C. § 1447(c).  Putting the two statutory subsections together, Section 1447(d) bars appellate review of remand orders based on a "defect" in removal or a "lack of subject matter jurisdiction." *Things Remembered*, 516 U.S. at 129.

12.     PROMESA Section 306(d) is materially identical to the bankruptcy removal provision considered by the Supreme Court in *Things Remembered*.  *Compare* 28 U.S.C. § 1452(a), *with* PROMESA § 306(d).  As with 28 U.S.C. § 1452, the bankruptcy removal provision, "[t]here is no express indication in [Section 306 of PROMESA] that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy," "[n]or is there any reason to infer from § 1447(d) that Congress intended to exclude [PROMESA] cases from its coverage." *Things Remembered*, 516 U.S. at 129.  On the contrary, Congress modeled

---

[3] PROMESA Section 306 was the only asserted basis of jurisdiction in the Governor's Action.

5

PROMESA after the Bankruptcy Code, so *Things Remembered* applies with full force. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 125 (1st Cir. 2019).[4]

13.     Thus, *Things Remembered* forecloses appellate review of this Court's order remanding the Governor's Action.  The Court held the Governor's Action was not removable because it fell within the police powers exception to PROMESA Section 306(d)(1), prohibiting removal of actions by governmental units to enforce police and regulatory powers.  Whether that holding is characterized as finding a defect in removal or a lack of subject matter jurisdiction, Section 1447(d), as construed in *Things Remembered*, 516 U.S. at 127–29, forecloses appellate review all the same.  Accordingly, this Court is not required to parse out whether LUMA's violation of the prohibition on removing actions by a governmental unit to enforce its police powers is a defect in removal or implicates the Court's jurisdiction.  *See, e.g.*, *Williams v. AFC Enters., Inc.*, 389 F.3d 1185, 1190 (11th Cir. 2004) (no jurisdiction to review remand order finding improper removal under SLUSA, regardless of whether the district court's remand order was characterized "as relating to subject matter jurisdiction or a defect other than subject matter jurisdiction").

14.     In its remand order, this Court held that the police powers exception to removability did not divest it of subject matter jurisdiction.  *See* Order at 3–4 n.3 (first citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d 557, 567 (S.D.N.Y. 2007) ("*MTBE I*"); and then citing *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 51 & n.14 (2d Cir. 2009)).  That conclusion does not affect the applicability of Section 1447(d).  The First

---

[4] In its assertion of appellate jurisdiction, LUMA argues only that the bars to appellate review of remand orders under 28 U.S.C. § 1452(b) and PROMESA Section 306(d)(2) do not apply because those subsections apply "only if the ground for remand is equitable." *See* Mot. at 6.  This has no bearing on whether the separate bar on appellate review contained in Section 1447(d) applies. *See Things Remembered*, 516 U.S. at 129 ("The fact that § 1452 contains its own provision governing certain types of remands in bankruptcy . . . does not change our conclusion.").

6

Circuit has held that "removal in contravention of [a] prohibition against removal . . . creates a procedural defect" within the first clause of Section 1447(c).  *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 27–28 (1st Cir. 2012) (removal in contravention of 28 U.S.C. § 1441(b)).  Other courts are in accord:  "a statutory restriction against removal . . . is a defect in removal procedure under § 1447(c)" that is not reviewable under Section 1447(d) as construed in *Things Remembered*. *Ernewayn v. Home Depot U.S.A., Inc.*, 727 F.3d 369, 371–72 (5th Cir. 2013) (removal in contravention of 28 U.S.C. § 1445(c)).  Accordingly, assuming the police powers exception were characterized as a "defect" in removal and not a jurisdictional defect, Section 1447(d) would still preclude appellate review.[5]

15.     Although this Court need not consider the issue for the reason just discussed, other courts have held that the police powers exception implicates subject matter jurisdiction.  In particular, some circuit courts have recognized that the police powers exception to removal over cases a bankruptcy court might otherwise be able to adjudicate is an issue of subject matter jurisdiction, because when the police powers exception applies, the bankruptcy removal statute (which is an asserted basis for federal jurisdiction) cannot give rise to federal jurisdiction.  In *City & County of San Francisco v. PG&E Corp.*, for example, the Ninth Circuit (in reviewing whether

---

[5] *Things Remembered* and other earlier cases use the phrase "defect in removal procedure" to describe the first class of cases in Section 1447(c) made unreviewable by Section 1447(d).  Courts historically used that phrasing because, at the time *Things Remembered* was decided, Section 1447(c) used that phrase to describe cases that must be remanded if the defect was timely raised.  *See* 516 U.S. at 128 n.3; *Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1056–57 (8th Cir. 2020) (en banc) (summarizing history).  That language is no issue here for two reasons.  *First*, Section 1447(c) was amended in 1996 to require only a "defect" in removal, not a "defect in removal procedure," *Holbein*, 983 F.3d at 1056–57, and *Things Remembered* holds that "remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)," 516 U.S. at 127.  Today, that means a remand order based on any timely raised "defect" is not reviewable; a defect in removal "procedure" is no longer required.  *Second*, even under the old regime, removal in contravention of a statutory prohibition was considered a defect in removal procedure.  *See Holbein*, 983 F.3d at 1056 (collecting cases); *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991) (procedural defect under old Section 1447(c) "is any defect that does not go to the question of whether the case originally could have been brought in federal district court"); *MTBE I*, 522 F. Supp. 2d at 562 ("majority of courts have held that improperly removed actions are . . . defects in procedure").

7

a denial of remand was appropriate) considered whether removal was precluded because the claims were subject to the police powers exception and therefore "not subject to removal under 28 U.S.C. section 1452(a)." *See* 433 F.3d 1115, 1121 (9th Cir. 2006). It explained: "This is a question of subject matter jurisdiction[.]" *Id.*[6] And the Fourth Circuit, too, has explained that there was "no federal jurisdiction under the bankruptcy removal statute" over a suit that was "a valid exercise of Baltimore's police power." *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 224–25 (4th Cir. 2022). Courts from within the First Circuit have reached the same conclusion. *See Massachusetts v. New Eng. Pellet, LLC*, 409 B.R. 255, 257–59 (D. Mass. 2009) (concluding that an action removed from state court was exempt from the automatic stay because it fell within the police powers exception found in 11 U.S.C. § 362(b)(4)); *Massachusetts v. Sohmer (In re Sohmer)*, 388 B.R. 448, 455 (D. Mass. 2008) (explaining that had an adversary proceeding brought by the Commonwealth of Massachusetts pursuant to its police or regulatory powers been removed pursuant to Section 1452(a), the proceeding "would have been remanded expeditiously to the state court for lack of jurisdiction").

16. But regardless of whether this Court's remand order found a "defect" in removal or a lack of subject matter jurisdiction, the order is fatal to LUMA's motion to stay the Governor's Action because there is no question that removal in contravention of the requirements of PROMESA Section 306(d) is, at a minimum, a defect under Section 1447(c) made unreviewable by Section 1447(d) as construed in *Things Remembered*.

---

[6] In *PG&E*, the Ninth Circuit held that Section 1447(d) did not bar review of an order *denying* remand. 433 F.3d at 1121 ("There is no question . . . that § 1447(d) only applies to cases remanded pursuant to § 1447(c)"). That holding follows ineluctably from the plain text of Section 1447(d), which prohibits review only of an order "remanding a case." 28 U.S.C. § 1447(d). Needless to say, that rule has no applicability here because the Court issued "[a]n order remanding" the case, *id.*, not an order denying remand as in *PG&E*.

8

17. That is the end of the road for LUMA's motion to stay the Governor's Action. As a practical matter, LUMA obviously is not entitled to a stay pending appeal of a non-appealable order.[7] And as a legal matter, Section 1447(d) forecloses LUMA's assertion that it is likely to succeed on the merits of its appeal, for LUMA has no chance of succeeding on the merits on an appeal the First Circuit lacks jurisdiction to hear. *See, e.g.*, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 549 (1986) ("[B]ecause the Court of Appeals was without jurisdiction to hear the appeal, it was without authority to decide the merits."); *Concordia Partners, LLC v. Pick*, 790 F.3d 277, 278 (1st Cir. 2015) (explaining First Circuit "do[es] not reach the merits" when it lacks appellate jurisdiction).

**B.      Setting aside Section 1447(d), LUMA has not shown that it is likely to succeed on the merits.**

18. Even setting aside appealability, LUMA is wrong that it is likely to succeed on appeal. Likelihood of success on the merits is paramount among the stay factors. *Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304 (1st Cir. 2025) (holding that '[t]he most important' of the stay factors is the 'likelihood of success on the merits.' If the [movant] fails to make a strong showing that it is likely to succeed on the merits, 'the remaining elements are of little consequence.'" (citations omitted)); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 650 B.R. 296, 305 (D.P.R. 2022) (Swain, J.); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (stating that courts should adhere to the "several hundred years of history" and require that a party show it is "likely to succeed on the merits.'"). "It is not enough that the chance of success on the merits be better than negligible." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of*

---

[7] As the First Circuit held, section 1447(d) does not bar review of remand orders based on forum selection clauses and thus the P3A Action is reviewable. *See Autoridad de Energía Eléctrica v. Vitol S.A.*, 859 F.3d 140, 145 (1st Cir. 2017); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d at 125.

*City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) (quoting *Nken*, 556 U.S. at 434).  Rather, the movant must make "a strong showing that he is likely to succeed on the merits."  *Nken*, 556 U.S. at 425–26.  Because LUMA makes no such showing, the Motion should be denied.

> **1.      LUMA should be held to the "likely to succeed on the merits" standard because the Governor's Action does not present a "novel" and "serious" legal issue or "unusually severe" harm.**

19.      LUMA tries to evade the high "likelihood to succeed" standard by arguing that its motion falls within very rare circumstances when a court "identifies a serious legal question <u>and</u> determines that the harm incurred by appellants is unusually severe."  *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap., LLC*, 2024 WL 3384992, at *7 (D.P.R. July 11, 2024) (emphasis in original).  It is far from clear that this deviation from the normal standard is good law in the First Circuit.  As explained in *Zurich American*, "the 'serious legal question' or 'substantial case on the merits' standard [is] borrowed from other circuits, as opposed to the 'requisite strong showing' standard for likelihood of success required in this Circuit."  *Zurich Am. Ins. Co. v. L.P.C.&D., Inc.*, 2026 WL 1229222, at *1 n.1 (D.P.R. May 5, 2026) (citing *Rhode Island*, 155 F.4th at 42).  "In the First Circuit, the likelihood of success on the merits is the indispensable ingredient necessary to a preliminary injunction finding."  *Id.*  (first citing *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("[t]he sine qua non of this four-part inquiry is likelihood of success on the merits:  if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"); and then *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) ("[t]he sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits")).

20.      Even if LUMA must only establish "that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear," *Canterbury Liquors & Pantry v.*

10

*Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998) (finding serious legal issue where there were only two reported cases addressing the issues on appeal), LUMA cannot make that showing.

21.     The critical legal issue in the Governor's Action is the application of the police powers exception in PROMESA Section 306(d)(1), which is analogous to the police powers exception in Bankruptcy Code Section 362(b)(4).  That is a well-worn path.  In fact, the parties argued extensively over which of the numerous First Circuit decisions on the police powers exception applies here precisely because the First Circuit has often applied the relevant law to government regulatory enforcement efforts.  Indeed, as the Court noted, the facts here are akin to those in *Parkview Adventist Medical Center v. United States*, 842 F.3d 757 (1st Cir. 2016).

22.     There, a governmental unit sought to terminate a contract with a hospital that failed to meet certain requirements under the Medicare statute after it filed for bankruptcy relief.  *Id. at* 758–59.  The First Circuit held that the governmental unit's action to terminate the contract did not violate the automatic stay under Bankruptcy Code Section 362(b)(4), which provides that the automatic stay does not apply to "the enforcement of a judgment . . . obtained in an action or proceeding by a governmental unit to enforce such governmental unit's . . . police or regulatory power." *Parkview*, 842 F.3d at 763–64.  The exception applied because the governmental unit had a strong public policy interest in regulating how Medicare-program funds were spent and did not seek monetary recovery from the debtor-hospital.  *Id.* at 764.  Similarly, in *In re Ruiz*, the First Circuit extended the police powers exception under Bankruptcy Code Section 362(b)(4) to regulatory efforts to protect public welfare and found that ORIL, which oversees the highly-regulated Puerto Rico milk industry, acted within its police powers under Section 362(b)(4) of the Bankruptcy Code when it revoked a dairy farmer's dairy license and forced him to sell his milk quota because he was engaged in illegal milk trafficking.  *Milk Indus. Regul. Off. of the*

*Commonwealth of P.R. (In re Ruiz)*, 122 F.4th 1, 7, 14 (1st Cir. 2024).  There is, in short, nothing novel, unique, or substantial about LUMA's effort to evade the police powers exception.  The First Circuit has considered that issue time and again, and any appeal (if one were available) would simply involve applying established precedents, as this Court's decision illustrates.

23.    Even if that were not true, however, LUMA's preferred standard would require it to show irreparable harm that is "unusually severe."  And as explained in Section I.C *infra*, LUMA has not come particularly close to making that showing.

> **2.    The Court properly remanded because the Governor's Action is an exercise of police and regulatory powers under PROMESA Section 306(d)(1).**

24.    No matter the standard, a stay pending appeal is not warranted because this Court's decision is entirely correct.  Section 306(d)(1) permits removal of claims over which the Court has jurisdiction under Title III, "other than . . . a civil action by a governmental unit to enforce the police or regulatory power of the governmental unit."  Applying the First Circuit's two-step framework, the Court determined, first, under the statutory text, that the Government is a "governmental unit[]" enforcing "police or regulatory powers," and second, under the public policy and pecuniary purpose tests, that the Governor's Action is designed to effectuate public policy rather than advance any pecuniary interest.  Order at 17–22.  The Court's application of those requirements to the facts here was consistent with First Circuit precedent.  LUMA, as the party that removed the Governor's Action, bore the burden of demonstrating that removal was proper, *see Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 48 (1st Cir. 2008), and it did not carry that burden.

12

> i.  *The Governor's Action seeks to enforce generally applicable regulatory laws.*

25.     The Court correctly held that Act 29 and Act 120 are generally applicable regulatory laws whose stated purpose is to "protect the public interest" and ensure "transparency and flexibility" in negotiations that "lead to a financially feasible electric power system focused on the welfare of consumers." Order at 13–14. LUMA's contrary argument that Act 29 and Act 120 "regulate only P3A and PREPA," is meritless. Mot. at 8. Act 29 establishes the public policy framework for all public-private partnerships in Puerto Rico, not merely those involving PREPA. Act 120 builds upon that framework specifically for transactions involving PREPA's functions, but its contracting requirements—public interest board approval, legislative authorization, energy compliance certification, and term limitations—are regulatory standards designed to protect the public welfare, not private contractual terms. The First Circuit has made clear that the police powers exception is not limited to direct threats to health and safety but "extend[s] more broadly to regulatory efforts to protect public welfare." *Ruiz*, 122 F.4th at 14–15. Rules and regulations concerning important governmental contracts, like contracts concerning the provision of electricity for consumers, "bear a close nexus to the welfare of the people of Puerto Rico." Order at 14.

26.     LUMA's continued reliance on *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 445 (1st Cir. 1986), is misplaced and was properly rejected. This Court correctly distinguished *Corporacion*, where the Department of Health sought only to terminate a contract based on the debtor's alleged defaults without invoking any regulatory framework. *Id.* at 446. Here, by contrast, the Governor seeks to enforce statutory frameworks

13

governing the formation and implementation of public-private partnerships.[8] That governmental enforcement of police and regulatory powers ultimately results in a contract termination does not determine whether the Governor's Action is an exercise of such powers. Order at 16; *see Parkview*, 842 F.3d 757 (holding government's termination of contract with hospital under Medicare statute fell under police powers exception to the automatic stay).

27. *Missouri v. U.S. Bankruptcy Court for the E.D. of Arkansas* is also readily distinguishable. 647 F.2d 768 (8th Cir. 1981). The statute at issue there was specifically triggered by insolvency, empowering the state to appoint a receiver upon evidence of insolvency. *Id.* at 776. The Eighth Circuit found this law "primarily relate[d] to the protection of the pecuniary interest in the debtors' property" and thus "directly conflict[ed] with the control of the property by the bankruptcy court." *Id.* Acts 29 and 120 are nothing like the Missouri statute. They apply irrespective of financial condition and do not empower any governmental entity to seize property or appoint a receiver; rather, they establish the regulatory framework governing public contracts— a quintessential exercise of the police power. *See* Order at 13–14. Enforcing these requirements vindicates the public's interest in ensuring lawful public contracting processes, which are precisely the kind of regulatory enforcement the police powers exception protects.

>  ii. *The police powers exception does not have a temporal limitation.*

28. LUMA also argues that the Governor's Action does not fall within the police powers exception because PREPA did not file its Title III Case "for the purpose of evading" Acts 29 and 120. Mot. at 9 (citing *Kupperstein v. Schall (In re Kupperstein)*, 994 F.3d 673, 678 (1st

---

[8] Act 29's stated purpose is to "establish a new public policy and provide the legal framework to promote the use of Public-Private Partnerships as a development strategy, maintaining the necessary controls to protect the public interest in harmony with the profit motive of any private operation." Act 120 "establishes the process that shall apply to any transaction that establishes a Public-Private Partnership for any PREPA function, services, or facility."

14

Cir. 2021)). In other words, LUMA asserts that because the Government seeks to exercise its police and regulatory powers through the Governor's Action after PREPA's Title III Case was already filed, the Governor's Action cannot fall within the police powers exception. This argument is wrong for many reasons.

29. First, LUMA's argument conjures a limitation on the police power from thin air. PROMESA Section 306(d)(1) does not say that only actions by governmental units to enforce police and regulatory power that are filed before the Title III Case is filed cannot be removed. It contains no temporal limitation at all. To endorse LUMA's theory would radically rewrite Congress's words, which is impermissible.

30. Second, LUMA's theory would effectively immunize debtors from facing state courts and state regulatory proceedings whenever they engage in post-petition malfeasance by allowing actions enforcing police and regulatory powers to be subject to the automatic stay—a perverse result that cannot possibly reflect congressional intent. *See Cournoyer v. Town of Lincoln*, 790 F.2d 971, 977 (1st Cir. 1986) (stating debtors are "not excused because of [their] bankruptcy from valid and enforceable state and local regulations"). If a debtor engages in misconduct after filing a petition, nothing in PROMESA disables government actors from rectifying that conduct through the exercise of police or regulatory powers.

31. Third, LUMA's interpretation of the purpose of the police powers exception is too narrow. The purpose of the police powers exception is to leave federal courts out of suits that implicate state and local police power. *See Koken v. Reliance Grp. Holdings (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 385 (Bankr. E.D. Pa. 2002) (explaining the exception is meant "to leave the states, for certain purposes, unfettered by bankruptcy proceedings and free of a federally imposed stay of the pursuit of important state interests"). That purpose is vindicated here, where

15

the Governor's Action seeks to enforce Acts 29 and 120, which, as the Court recognized, are quintessential exercises of Puerto Rico's police and regulatory power. The Court's proper application of the police powers exception reinforces that a bankruptcy filing will not be a way to usurp state regulatory functions.

### 3. The pending DACO Appeal does not enhance LUMA's likelihood of success.

32. LUMA asserts that the Governor's Action should be stayed while the DACO Appeal[9] is being decided by the First Circuit because the First Circuit's decision there "could" provide guidance on how the police powers exception should be applied to challenges of the validity of the T&D OMA. Mot. at 13–14. However, at the outset, even assuming *arguendo* that the DACO Appeal bears some relation to the instant cases, this Court is not precluded from remanding the matter to state court merely because a similar or parallel issue may be resolved in a separate appeal. In all events, the issues LUMA raises in the DACO Appeal are fundamentally distinct from the issues presented in the Governor's Action, and do not enhance its likelihood of success in this proceeding.

33. LUMA's appeal in the DACO Appeal proceeding implicates entirely different issues. In the DACO Appeal, LUMA argues that the government cannot invoke the police powers exception to the automatic stay under 11 U.S.C. § 362(b)(4) to regulate another government agency during PREPA's Title III case. This issue has no application here. The issue before this Court in the Governor's Action is whether the Governor's challenge to the validity of the T&D OMA under Puerto Rico laws that regulate government contracting is an exercise of police power. It has nothing to do with whether the government can regulate another government agency under

---

[9] *LUMA Energy v. P.R. Dept. of Consumer Aff. ("DACO") (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, Case No. 25-2077 (1st Cir.).

the police powers exception.  In the DACO Appeal, LUMA also argues that DACO's invalidation of its liability waiver served a pecuniary purpose because it would facilitate third-party claims against LUMA that, *if* successful, could affect PREPA's finances *if* LUMA is right that PREPA is obligated to indemnify LUMA.  That issue, too, has no application here.  In the Governor's Action, the Government challenges the validity of the T&D OMA itself.  Even if LUMA were to prevail in the DACO Appeal, a ruling that DACO's consumer-protection lawsuit violated the automatic stay would have no bearing on whether removal of the Governor's Action was proper.

34.     Moreover, a critical and dispositive issue is present in the DACO Appeal that does not exist here:  LUMA's lack of appellate standing in the DACO Appeal.  The First Circuit is likely to find that it lacks appellate jurisdiction in the DACO Appeal because LUMA lacks appellate standing to enforce the automatic stay and, thus, is unlikely to reach the merits of the police power issue in that case.  Either way, LUMA cannot bootstrap whatever marginal chance of success it may have in its already-tenuous DACO Appeal into a showing of likelihood of success in the Governor's Action.

**C.     LUMA will not be irreparably injured absent a stay.**

35.     LUMA will not be irreparably harmed by litigating in Commonwealth Court.  LUMA has no special entitlement to a federal forum; on the contrary, Congress's prohibition on removing actions enforcing sovereign police powers reflects its desire that such litigation proceed in state or local court.  And LUMA's status as a contract counter-party to PREPA, the Title III debtor, does not transform every dispute involving PREPA into a matter that must be resolved in the Title III Court.  Nor can LUMA credibly claim that litigating in Commonwealth Court will deprive it of any substantive rights.  The Commonwealth Court is fully capable of adjudicating the parties' contractual disputes and interpreting Puerto Rico law—indeed, it is the forum best suited to do so.  LUMA's implicit suggestion that it cannot vindicate its rights unless this Court retains

17

jurisdiction is offensive to the dignity of the Commonwealth Court. If LUMA believes that the Extension Letter is valid, that Act 29 and Act 120 do not apply, or that the T&D OMA remains in effect, it may press those arguments before the Commonwealth Court. There is no reason to believe (and LUMA has offered none) that the Commonwealth Court will deny LUMA a fair hearing or fail to apply Puerto Rico law correctly.

36. LUMA's assertion that without the stay the Governor's Action will become "a shuttlecock, batted back and forth between a state and federal court" rests on its mistaken belief that it is likely to prevail on its appeal. Mot. at 9 (quoting *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 81 (1st Cir. 2021)). As explained above, it most assuredly is not: first and foremost because Section 1447(d) provides that this Court's order remanding the Governor's Action is not reviewable.

**D.      A stay will substantially injure the Government and harm the public interest.**

37. Because the Government is the opposing party, the third and fourth factors ("whether issuance of the stay will substantially injure the other parties interested in the proceeding" and "where the public interest lies") collapse. *Nken*, 556 U.S. at 434. Both factors weigh strongly against granting the stay. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025) (finding the federal government is irreparably harmed by injunction because "it 'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the Government from enforcing its policies against nonparties" (alterations in original)).

38. LUMA's contention that the Commonwealth's three-year delay in filing suit undercuts any claim of harm from a stay is unpersuasive. The cases cited by LUMA stand for the

18

unremarkable proposition that a plaintiff's delay in bringing a suit and seeking a preliminary injunction after discovering claims weighs against a finding of irreparable harm. *See, e.g.*, *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988) ("It has been held that an unreasonable delay between the time when a plaintiff is first apprised of the infringing acts and the time of filing suit will rebut the presumption of irreparable harm."); *Jagex Ltd. v. Impulse Software*, 750 F. Supp.2d 228, 239 (D. Mass. 2010) ("[P]laintiff's delay in filing suit and moving for injunctive relief undermines its claim of irreparable harm."); *Longo En-Tech P.R., Inc. v. EPA*, 2017 WL 878442, at *8 (D.P.R. Mar. 6, 2017) ("Plaintiff's arguments in favor of irreparable harm are severely debilitated by the delay in bringing suit."). That is not this case. LUMA is the party seeking a stay, not the Governor, and the relief sought is a stay pending appeal, not a preliminary injunction to stop an ongoing harm. To the contrary, "further staying these proceedings . . . inflicts continued injury to the [Government] by delaying the resolution of its claims." *Maine*, 2026 WL 74096, at *5.

39.     Every day that the Governor's Action remains stayed in federal court rather than proceeding in the Commonwealth Court is a day in which the Commonwealth is denied the ability to exercise the sovereign regulatory authority that Congress, through PROMESA, expressly preserved. *See* PROMESA § 303 ("[T]his subchapter does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality[.]"). Moreover, because the question of how electricity is distributed to consumers in Puerto Rico "is an important issue that has significant implications for public welfare," Order at 20, any delay in the adjudication of whether LUMA's continued operation of PREPA's transmission and distribution system rests on a valid contractual foundation directly

19

harms the people of Puerto Rico, who are entitled to the transparency, legislative oversight, and regulatory protections that Act 29 and Act 120 were enacted to guarantee, *see* Order at 17–18 ("The government enacted those laws [Act 29 and Act 120] to enhance transparency, safeguard the public fisc, and ensure the protection of the public interest, and those interests are cognizable as part of the government's police and regulatory powers."). "Any potential procedural inconvenience to [LUMA] is significantly outweighed by the [Government's] and the public's interest in a timely adjudication of the complaint." *Maine*, 2026 WL 74096, at *5.

## II. THE COURT SHOULD NOT STAY THE P3A ACTION.

40. As demonstrated above, the Governor's Action is certain to proceed in Commonwealth Court, including because the First Circuit lacks jurisdiction to entertain LUMA's appeal. That has significant consequences for LUMA's argument that this Court should stay the P3A Action pending appeal. Given that the Governor's Action and the P3A Action generally raise the same issues, there is no point in staying the P3A Action when, by virtue of the Governor's Action, those issues are already headed to Commonwealth Court. In other words, LUMA cannot show irreparable harm from the denial of a stay in the P3A Action because the harm it seeks to avoid—litigating in Commonwealth Court—is going to happen anyway in the Governor's Action. But even if that were not true, all the stay factors, again, weigh heavily against LUMA's position.

### A. LUMA has not shown that it is likely to succeed on the merits.

41. Also as demonstrated above, LUMA raises no substantial issue with respect to the police powers exception to removability. *See supra* § I.B. This Court's ruling that the police powers exception applies to P3A's Action is a straightforward application of settled First Circuit precedent and provides no basis for a stay pending appeal.

42. Nor does the other ground for this Court's remand of the P3A Action. The forum selection clause does not present a systemic issue of importance to the federal courts—it is an issue

20

of local law that belongs in local courts.  LUMA nonetheless argues it has a substantial case that the T&D OMA's forum selection clause does not require remand.  Mot. at 9.  LUMA raises three arguments against the forum selection clause, none of which is likely to succeed on appeal.

43.     First, LUMA argues that P3A and PREPA waived the forum selection clause by failing to comply with pre-litigation dispute resolution procedures.  This Court rejected that argument because P3A and PREPA commenced the Action in the correct court under the forum selection clause and engaged in no conduct inconsistent with their right to enforce that clause.  By executing the T&D OMA, LUMA itself expressly waived its removal rights with respect to matters encompassed by the forum selection clause.  This Court's decision is entirely correct.

44.     Second, LUMA argues that the claims do not "arise out of" the T&D OMA.  The Court found that the declaratory relief sought in the P3A Complaint directly concerns "the terms and status of the T&D OMA parties' contractual relationship[,]" including the validity of the Extension Letter, the effect of any invalidation on the Supplemental Agreement, and LUMA's transition obligations under the T&D OMA.  Order at 28.  The Court noted that LUMA concedes this point:  "LUMA and the Oversight Board's position is undermined by LUMA's admission elsewhere in the briefing that the claims pleaded in the Actions concern the application of 'government contracting rules external to the T&D OMA.'"  Order at 15–16.  Furthermore, as the First Circuit held in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 380–81 (1st Cir. 2011), dispute resolution provisions governing disputes "arising under" an agreement do not clearly exclude disputes concerning the invalidation of that agreement.  *See also* Order at 28–30.

45.     Third, LUMA argues that enforcement of the forum selection clause would contravene a strong public policy requiring adjudication in the Title III Court.  This Court has repeatedly held that its exclusive jurisdiction over PREPA's property does not preclude remand or

21

abstention with respect to disputes concerning the T&D OMA. *Luma Energy, LLC v. P.R. Elec. Power Auth. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 813 F. Supp. 3d 234, 250 n.14 (D.P.R. 2025) (first citing *Asociación de Salud Primaria de P.R., Inc. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp.3d 667, 674 (D.P.R. 2018); and then *Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 899 F.3d 13, 22 (1st Cir. 2018)). And Section 306(b) of PROMESA does not bar enforcement of the T&D OMA's mandatory forum provision. LUMA has not shown that litigating in the Commonwealth Court—the court it agreed to in its contract and in the jurisdiction in which it is doing business—would be "so gravely difficult and inconvenient that [LUMA] will for all practical purposes be deprived of [its] day in court." Order at 33 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972) (alterations in original)).

46.     LUMA asserts it has a "substantial case that the forum selection clause in the T&D OMA does not require remand[.]" Mot. at 9. Whether a forum selection clause is mandatory and requires remand is also not a novel or serious legal issue. As the Court's order shows, the law on remand pursuant to forum selection clauses, waiver, and scope of forum selection clauses is well-traversed. *See* Order at 22–35. The only novel or serious legal issues are purely issues of Puerto Rico law presented in the complaint filed in the Commonwealth Court by P3A.

**B.     LUMA will not be irreparably injured absent a stay.**

47.     LUMA cannot demonstrate that it will be irreparably harmed if the P3A Action is not stayed. Most fundamentally, because the Court's remand of the Governor's Action is non-reviewable, the Governor's Action will proceed in Commonwealth Court regardless of any stay of the P3A Action. And given that Puerto Rico courts are the ultimate expositors of Puerto Rico law, a Commonwealth Court judgment in the Governor's Action would control over any federal judgment. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other

22

federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."). LUMA thus cannot credibly claim that it will suffer irreparable harm by litigating in the very forum that will authoritatively resolve these questions. To the contrary, denying the stay avoids the harms of duplicative proceedings across federal and local courts—inconsistent judgments, conflicting relief, and wasted judicial resources—by consolidating litigation where it belongs: in Puerto Rico courts applying Puerto Rico law.

48. Moreover, LUMA has no special entitlement to litigate in the Title III Court. LUMA is neither the Debtor nor the Debtor's representative. LUMA is a private contractor that entered into an agreement in Puerto Rico with PREPA and P3A—Puerto Rico public corporations—to do business in Puerto Rico managing Puerto Rico's essential electric system. And in that agreement LUMA agreed for its disputes to be heard by the Commonwealth Court. The Bankruptcy Code and PROMESA exist to protect debtors and their estates from creditor collection actions that would interfere with the restructuring process, not to shield non-debtor counterparties like LUMA from having to defend themselves in state court. LUMA's status as a contracting party does not transform every dispute involving PREPA into a matter that must be resolved in the Title III Court.

**C.      A stay will substantially injure P3A and harm the public interest.**

49. The public interest strongly favors denying the stay. Parallel proceedings in federal and local courts serve no one's interest and harm the public by creating the risk of inconsistent judgments on questions of vital importance to Puerto Rico, namely, whether LUMA's continued operation of PREPA's transmission and distribution system rests on a valid contractual foundation. The Governor's Action will resolve these questions in Commonwealth Court. Allowing the P3A Action to proceed there as well ensures that the courts of Puerto Rico, which have a paramount interest in construing their own regulatory framework, will provide the authoritative interpretation

23

of Act 29 and Act 120.  By contrast, staying the P3A Action in federal court while the Governor's

Action proceeds in local court would create the very forum-shopping and duplicative-litigation

concerns that LUMA purports to decry, while depriving the people of Puerto Rico of a timely,

authoritative resolution of questions concerning the lawful governance of their electrical system.

50.     Every day that the P3A Action remains stayed rather than proceeding in

Commonwealth Court is a day in which P3A is denied the ability to protect the public welfare by

ensuring that the T&D OMA stands on a valid contractual foundation.  Moreover, any delay in

adjudicating the P3A Action directly harms the people of Puerto Rico, who are entitled to the

transparency, legislative oversight, and regulatory protections that Act 29 and Act 120 guarantee.

*See* Order at 17, 20.

51.     Moreover, P3A will be harmed if it is stripped of its bargained-for right to have

issues arising under the T&D OMA litigated exclusively in Commonwealth Court.  *See PREPA v.*

*Vitol S.A. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, Adv. Pro. 17-00221-LTS at 13 (D.P.R. Feb.

12, 2019) [Dkt. No. 31] (remanding proceedings to Commonwealth Court in order to enforce

bargained-for forum selection clause); *Vitol*, 859 F.3d at 146–48 (affirming remand of

Commonwealth Court proceeding where mandatory forum selection clause required proceeding

to be heard in the Commonwealth Court).

## **CONCLUSION**

For the reasons set forth above, the Court should deny the Motions.

[*Remainder of this page intentionally left blank.*]

24

Dated: May 18, 2026
San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Peter Friedman*
Peter Friedman
(Admitted *Pro Hac Vice*)
Maria J. DiConza
(Admitted *Pro Hac Vice*)
Gabriel L. Olivera
USDC No. 303314
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
    mdiconza@omm.com
    golivera@omm.com

*Attorneys for the Government of Puerto Rico
and Hon. Jenniffer González in her official
capacity and the Puerto Rico Fiscal Agency
and Financial Advisory Authority acting on
behalf of the Puerto Rico Public-Private
Partnership Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Manuel A. Pietrantoni*
Manuel A. Pietrantoni
USDC No. 219805
Ignacio J. Labarca-Morales
USDC No. 303307
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Telephone: (787) 705-2171
Facsimile: (787) 936-7494
Email: mpietrantoni@mpmlawpr.com
    ilabarca@mpmlawpr.com

*Attorneys for the Government of Puerto Rico
and Hon. Jenniffer González in her official
capacity and the Puerto Rico Fiscal Agency
and Financial Advisory Authority acting on
behalf of the Puerto Rico Public-Private
Partnership Authority*

**LOURDES GÓMEZ TORRES**
Secretary of Justice

**TANIA L. FERNÁNDEZ-MEDERO**
Deputy Secretary of Civil Litigation

*/s/ Josué N. Torres Crespo*
**JOSUÉ N. TORRES CRESPO**
USDC NO. 229805
Email: jntorres@justicia.pr.gov

*/s/ Idza Díaz Rivera*
**IDZA DÍAZ RIVERA**
USDC 223404
Email: idiaz@justicia.pr.gov

**PUERTO RICO
DEPARTMENT OF JUSTICE**
Federal Litigation and Bankruptcy Division
P.O. Box 9020192
San Juan, Puerto Rico, 00902-0192
Tel. 787-721-2900; Ext. 1401, 1412, 1421

25

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ Manuel A. Pietrantoni
Manuel A. Pietrantoni