UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>      Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY and PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY,<br><br>      Plaintiffs,<br><br>    -v-<br><br>LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC,<br><br>      Defendants. | Adv. Proc. No. 25-00061-LTS<br>in 17-BK-4780-LTS |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

| |
|---|
| HON. JENNIFFER GONZÁLEZ, GOVERNOR OF PUERTO RICO, COMMONWEALTH OF PUERTO RICO, <br><br>      Plaintiffs, <br><br>  -v- <br><br>LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC, <br><br>      Defendants. |

Adv. Proc. No. 25-00062-LTS
in 17-BK-4780-LTS

<u>MEMORANDUM ORDER DENYING MOTIONS FOR STAY OF ORDER TO REMAND PENDING APPEAL</u>

Before the Court are the *Urgent Motion for Stay of Order to Remand Pending Appeal and Request for Expedited Relief* (Docket Entry No. 51 in Adv. Proc. No. 25-00061) and the *Urgent Motion for Stay of Order to Remand Pending Appeal and Request for Expedited Relief* (Docket Entry No. 70 in Adv. Proc. No. 25-00062) (together, the "Stay Motions"),[2] filed by LUMA Energy, LLC and LUMA Energy Servco, LLC (together, "LUMA"). The Stay Motions request that the Court stay its order (Docket Entry No. 49 in Adv. Proc. No. 25-00061 and Docket Entry No. 68 in Adv. Proc. No. 25-00062) (the "Remand Order")[3] remanding the P3A/PREPA Action[4] and the Commonwealth Action to the Commonwealth Court of First Instance.

The Court has considered all of the arguments and submissions made in

---

[2] The Stay Motions are identical to each other except for their captions and a single docket reference on page 11. The Court therefore will refer to and cite the Stay Motions collectively.

[3] The Remand Order is available on Westlaw at the following citation: <u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>, Adv. Proc. Nos. 25-00061, 26-00062, 2026 WL 1361416 (D.P.R. May 8, 2026).

[4] Capitalized terms used but not defined herein have the meaning given to them in the Remand Order.

connection with the Stay Motions.[5]  The Court has subject matter jurisdiction of these matters

under section 306 of PROMESA, 48 U.S.C. § 2166.  For the following reasons, the Stay Motions

are denied.

BACKGROUND

The relevant factual background is set forth in the Remand Order, which the

Court issued on May 8, 2026.  See Remand Order, 2026 WL 1361416, at *2-3.  The Remand

Order determined that, subject to a brief delay to permit LUMA to seek interim relief, the

Actions would be remanded to Commonwealth Court because (i) the Commonwealth Action,

"whose claims invoke the police or regulatory power of a governmental unit, was improperly

removed from the Commonwealth Court" and (ii) the forum for the P3A/PREPA Action is

governed by "the T&D OMA [provision that] requires that litigation arising out of that

agreement be conducted in the Commonwealth Court."  2026 WL 1361416, at *15.

On May 13, 2026, LUMA filed a notice of appeal in the P3A/PREPA Action (the

"P3A/PREPA Action Appeal") and the Commonwealth Action (the "Commonwealth Action

Appeal" and, together with the P3A/PREPA Action Appeal, the "Appeals") and

---

[5]    In addition to the Stay Motions, the Court has reviewed the following briefs: *The
Governor of Puerto Rico and Commonwealth of Puerto Rico's and the Public-Private
Partnerships Authority's Objection to Luma's Urgent Motion for Stay Pending Appeal*
(Docket Entry No. 57 in Adv. Proc. No. 25-00061 and Docket Entry No. 75 in Adv. Proc.
No. 25-00062); the *Statement in Support of Urgent Motion for Stay of Order to Remand
Pending Appeal and Request for Expedited Relief Filed by Luma Energy, LLC and Luma
Energy Servco, LLC* (Docket Entry No. 58 in Adv. Proc. No. 25-00061 and Docket Entry
No. 76 in Adv. Proc. No. 25-00062) (the "FOMB Statement"); *LUMA's Reply in Support
of Urgent Motion to Stay Remand Pending Appeal* (Docket Entry No. 60 in Adv. Proc.
No. 25-00061 and Docket Entry No. 78 in Adv. Proc. No. 25-00062) (the "Reply"); and
the *Joinder of GoldenTree Asset Management LP, Syncora Guarantee, Inc., and the
Paul, Weiss Ad Hoc Group in Support of Urgent Motion for Stay of Order to Remand
Pending Appeal and Request for Expedited Relief* (Docket Entry No. 61 in Adv. Proc.
No. 25-00061 and Docket Entry No. 79 in Adv. Proc. No. 25-00062).

contemporaneously filed the Stay Motions.  On May 14, 2026, the Court set a briefing schedule on the Stay Motions and stayed the Remand Order pending resolution of the Stay Motions and further order of the Court.  (Docket Entry No. 52 in Adv. Proc. No. 25-00061 and Docket Entry No. 71 in Adv. Proc. No. 25-00062.)

DISCUSSION

"A stay is an extraordinary intervention into the usual process of appellate adjudication."  Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs., No. 26-1321, 2026 WL 1379424, at *5 (1st Cir. May 16, 2026).  To obtain a stay pending appeal, an applicant must do the following:

> (1) make a "strong showing that [they are] likely to succeed on the merits" in their appeal; (2) show that they "will be irreparably injured absent a stay"; (3) show that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) show that the stay would serve "the public interest."

New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion."  Nken, 556 U.S. at 433-34.  The first two of the applicable factors are the "most critical."  Id. at 434-35 ("It is not enough that the chance of success on the merits be 'better than negligible.' . . .  By the same token, simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." (citations omitted)).  However, "'[t]he sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits.'"  Acevedo-García v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002) (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

A.     Whether LUMA Is Likely to Succeed on Appeal

As explained below, LUMA has not met its burden of making a strong showing of

a likelihood of success on appeal with respect to the Appeals.  The Court will first address the

Commonwealth Action Appeal and then turn to the P3A/PREPA Action Appeal.

1.        The Commonwealth Action

LUMA cannot demonstrate a meaningful likelihood of success on the merits with

respect to the Commonwealth Action Appeal because section 1447(d) of title 28 of the United

States Code precludes appeal of the Remand Order in that proceeding.  As interpreted by the

Supreme Court, section 1447(d) (with certain enumerated exceptions that are not applicable

here) bars appellate review of remand orders granted on the bases identified in section 1447(c).

See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127-29 (1995) ("[Section] 1447(d) must

be read in pari materia with § 1447(c), so that only remands based on grounds specified in

§ 1447(c) are immune from review under § 1447(d).").  Thus, "[a]n order remanding a case to

the State court from which it was removed is not reviewable on appeal or otherwise," 28 U.S.C.

§ 1447(d), if the basis for the order is either (i) "that the district court lacks subject matter

jurisdiction" or (ii) that there exists "any defect other than lack of subject matter jurisdiction."

28 U.S.C. § 1447(c); see Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc., 201

F.3d 15, 16-17 (1st Cir. 2000).  Section 1447(c) provides that a motion to remand based upon the

latter category of "defects" must be made within thirty days of removal to "ensure that

improperly removed matters (excepting those where the court lacks subject matter jurisdiction)

[are] remanded early in the proceeding or not at all" and to thereby "avoid late-game forum

shopping by plaintiffs."  Pierpoint v. Barnes, 94 F.3d 813, 818 (2d Cir. 1996).

Consistent with the statute's purpose, Congress intended that a broad range of

defects be within the scope of section 1447(c).  See H.R.Rep. No. 104-799, at 2-4 (1996), 1996

U.S.C.C.A.N. 3417, 3418 ("The intent of this amendment was to impose a 30-day limit on all

motions to remand except in those cases where the court lacks subject matter jurisdiction.”);

Pierpoint, 94 F.3d at 817 (interpreting pre-amendment formulation of section 1447(c) and

concluding that “Congress intended [section 1447(c)] to be interpreted broadly in order to

subject a wide range of remand motions to the 30–day limit” to “prevent the delay, inefficiency,

and unfairness resulting from late-stage, forum-shopping remand motions”).  In Snapper, Inc. v.

Redan, the Eleventh Circuit canvassed the legislative history of section 1447 and concluded that

removal defects include failures to comply with “express statutory requirements for removal,”

but do not include “grounds for remand . . . that are external to the removal process and do not

depend on any ‘defect’ in the removal itself.”  171 F.3d 1249, 1253 (11th Cir. 1999); see City of

Albuquerque v. Soto Enters., Inc., 864 F.3d 1089, 1096 (10th Cir. 2017) (explaining that

Congress intended the phrase “any defect” to “include all statutory-based defects”).  Examples of

“external” bases for remand include “forum selection clauses, abstention, and [refusal to

exercise] supplemental jurisdiction.”  Id.  The First Circuit has endorsed “[t]he Eleventh

Circuit’s well-documented analysis of the context and history of the legislative revisions to”

section 1447(c).  Ericsson Inc., 201 F.3d at 17.

The Remand Order explains that the Commonwealth Action does not satisfy the

statutory requirements for removal set forth in section 306(d)(1) of PROMESA, 48 U.S.C.

§ 2166(d)(1), because that provision does not permit the removal of proceedings to enforce the

police or regulatory power of a governmental unit.  See Remand Order, 2026 WL 1361416, at

*4-9.  LUMA’s removal of the Commonwealth Action therefore did not satisfy the legal

requisites for removal.  Cf. Snapper, Inc., 171 F.3d at 1253 (defining “defect” to mean “[t]he

want or absence of some legal requisite; deficiency; imperfection; insufficiency” (quoting

Defect, Black’s Law Dictionary 418 (6th ed. 1990))).  The failure to satisfy statutory

requirements for removal "render[s] the removal 'defective' and justif[ies] a remand pursuant to § 1447(c)." Snapper, Inc., 171 F.3d at 1253; see Williams v. AFC Enters., Inc., 389 F.3d 1185, 1189-91 (11th Cir. 2004) (holding that section 1447(d) applied to remand order grounded in provision of Securities Litigation Uniform Standards Act barring removal of certain actions commenced in state court); Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1545 (5th Cir. 1991) (explaining that section 1447(c) "includes within its reach the bringing of an action not within the court's removal jurisdiction but that could have been brought originally in that court"). Several courts have held that the failure to satisfy the police or regulatory power exception to the bankruptcy removal statute (the text of which is the same as section 306(d)(1) of PROMESA in all relevant respects) is a "defect" that is within the scope of section 1447(c). See Orange Cnty. Water Dist. v. Unocal Corp., 584 F.3d 43, 50-51 (2d Cir. 2009) (determining that section 1447(c)'s thirty-day limit applied to challenge to removal based on police or regulatory power exception), aff'g In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 522 F. Supp. 2d 557, 562-66 (S.D.N.Y. 2007) (same); In re Briseno, 571 B.R. 214, 219-20 (Bankr. S.D. Tex. 2017) (same); In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 522 F. Supp. 2d 569, 572 n.12 (S.D.N.Y. 2007) (same); see also City of St. Louis v. Velsicol Chem. Corp., 708 F. Supp. 2d 632, 655 (E.D. Mich. 2010) (stating that section 1447(c) "may have" applied to the plaintiff's police powers argument, but ultimately determining that the police power exception did not apply).

LUMA's arguments to the contrary are unavailing. First, although section 306(e)(2) of PROMESA vests in the court of appeals "jurisdiction of appeals from all final decisions, judgments, orders and decrees entered under [Title III of PROMESA] by the district court," 48 U.S.C.A. § 2166(e)(2) (emphasis added), that provision does not clearly state an

intention to override section 1447(d). See Things Remembered, Inc., 516 U.S. at 128 ("Absent a clear statutory command to the contrary, we assume that Congress is 'aware of the universality of th[e] practice' of denying appellate review of remand orders when Congress creates a new ground for removal." (quoting United States v. Rice, 327 U.S. 742, 752 (1946))).[6] To the contrary, the language of section 306(e)(2) is substantially identical to that of section 1291 of title 28 of the U.S. Code, which does not override section 1447(d). Section 1447(d) effectively operates as an exception to the ordinary authority of the courts of appeals to review all final decisions of the district courts under section 1291 of title 28. See BP P.L.C. v. Mayor & City Council of Baltimore, 593 U.S. 230, 239 (2021) (suggesting that "[o]ne might just as easily conceive of § 1447(d)'s usual rule barring appellate review as itself an exception to the even more general rule that final district court orders are appealable under 28 U.S.C. § 1291"). The substantially similar language and common purpose of section 306(e)(2) and section 1291 suggest that, contrary to LUMA's argument, the former was not intended to override section 1447(d) in a manner that the latter does not. See Roosevelt Campobello Int'l Park Comm'n v. EPA, 711 F.2d 431, 437 (1st Cir. 1983) (holding that two statutes' common purpose and language supported the conclusion that Congress intended the construction of one to follow the other). Accepting LUMA's argument concerning the meaning of section 306(e)(2) would imply that the appellate review bar in section 1447(d) would virtually never apply because section 1291

---

[6] The Supreme Court established an exception to section 1447(d) with respect to the Westfall Act in Osborn v. Haley, 549 U.S. 225 (2007). In doing so, the Supreme Court was "clear about the narrow scope of its holding" and distinguished that case "from the typical case remanded for want of subject matter jurisdiction." Genelink BioSciences, Inc. v. Colby, 423 F. App'x 977, 979 (Fed. Cir. 2011) (quoting Osborn, 549 U.S. at 243); see Osborn v. Haley, 549 U.S. 225, 243-44 (2007) ("Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way—from state to federal court—does today's decision hold sway.").

provides for appellate review of "all" final district court decisions.

Second, the fact that the Remand Order also applies the T&D OMA's forum selection clause with respect to the P3A/PREPA Action does not make the Court's determination in the Commonwealth Action subject to appellate review.  LUMA cites BP P.L.C., in which the Supreme Court held that a district court's order rejecting multiple grounds for removal—some of which are subject to section 1447(d) and some of which are not—may be reviewed with respect to all such grounds.  593 U.S. at 237.  Here, the Remand Order is, in substance, two orders, applicable to two separate adversary proceedings and subject to two pending appeals.  The 25-62 Notice of Removal premised removal of the Commonwealth Action on a single basis—section 306(d)(1) of PROMESA—and the Remand Order determined that the Commonwealth Action did not fit within the terms of that statutory provision.  See Remand Order, 2026 WL 1361416, at *15 ("The Commonwealth Action, whose claims invoke the police or regulatory power of a governmental unit, was improperly removed from the Commonwealth Court and so must be remanded to the original forum.").  While the Remand Order also addressed the T&D OMA's forum selection clause, it did so only with respect to the P3A/PREPA Action.  The Court's decision concerning the forum selection clause is not properly within the scope of the Commonwealth Action Appeal, and there is no basis to use the Remand Order's discussion of the forum selection clause with respect to the P3A/PREPA Action to evade section 1447(d) with respect to the Commonwealth Action Appeal.

Accordingly, LUMA has not demonstrated any likelihood of success of its appeal with respect to the Commonwealth Action.[7]

---

[7] Even if the First Circuit were to address the merits of the police or regulatory power issue, LUMA presents little substantive analysis of alleged errors in the Remand Order. For example, the Court considered and rejected LUMA's argument that the statutes

2.      The P3A/PREPA Action

The Remand Order determined that the T&D OMA's forum selection clause

applied to the P3A/PREPA Action and compelled the Court to remand the P3A/PREPA Action

to the Commonwealth Court.  While the Remand Order acknowledged that there is no binding

law in the First Circuit governing the application of the precise language of the T&D OMA

forum selection clause, the Remand Order discussed and applied the most relevant existing

precedent.  Remand Order, 2026 WL 1361416, at *11-13.  The Remand Order further concluded

that, even if LUMA were correct that the T&D OMA established various conditions precedent to

the commencement of litigation, the Commonwealth Court—which is the parties' contractual

choice of forum—is best positioned to interpret the contract and adjudicate the parties' rights

with respect to that defense.  Remand Order, 2026 WL 1361416, at *14.  Although the Stay

Motions assert that LUMA "has a substantial case that the forum selection clause in the T&D

OMA does not require remand" (Stay Motions at 9), the Stay Motions merely repeat the

arguments concerning the forum selection clause that the Court considered and rejected in the

Remand Order (Stay Motions at 9), and LUMA's papers have not identified any specific errors

in the Court's reasoning.  Cf. In re Wellington, 631 B.R. 833, 839 (Bankr. M.D.N.C. 2021) ("[A]

---

underlying the Actions are not "generally applicable" regulatory laws.  See Remand
Order, 2026 WL 1361416, at *6 ("The claims asserted by Plaintiffs seek to enforce
generally applicable rules that govern the negotiation, approval, and implementation of
certain contracts with governmental entities . . . to ensure that public-private partnership
arrangements are negotiated and carried out in the public interest.").  Likewise, LUMA's
argument that Plaintiffs bear responsibility for alleged defects in the contracting process
does not establish that the Remand Order should be reversed.  Such arguments may (or
may not) be pertinent to the merits of the claims and defenses in the Actions, but
consideration of the application of the police or regulatory power exception is not an
opportunity to conduct federal "mini-trials of purely state regulatory issues."  Remand
Order, 2026 WL 1361416, at *8 (quoting Spookyworld, Inc. v. Town of Berlin (In re
Spookyworld, Inc.), 346 F.3d 1, 10 (1st Cir. 2003)).

party does not meet its burden on [the likelihood of success] factor by simply restating previous arguments from earlier filings."); Pueblo of Pojoaque v. State, 233 F. Supp. 3d 1021, 1116 (D.N.M. 2017) ("Because [movant] is, in essence, requesting that the Court grant it the relief, pending appeal, that the Court recently decided it was not entitled to receive, the burden of demonstrating likelihood of success 'is a heavy one.'" (quoting Wright & Miller § 2904 (3d ed. 2012)); Gesualdi v. L. Const. Corp., 759 F. Supp. 2d 432, 448 (S.D.N.Y. 2010) ("[Movant] does no more than restate some of the arguments that it presented in opposition to summary judgment, without any further elaboration or citations to case law, and which have already been considered and found to be without merit.  This is not a 'strong showing that [movant] is likely to succeed on the merits.'" (quoting Nken, 556 U.S. at 434)), aff'd in part, vacated in part, 485 F. App'x 450 (2d Cir. 2012).

LUMA has thus failed to demonstrate that it has even a "better than negligible" likelihood of prevailing in the Appeals.  Common Cause R.I. v. Gorbea, 970 F.3d 11, 14 (1st Cir. 2020) (quoting Nken, 556 U.S. at 434).[8]

B.      Whether LUMA Has Established Irreparable Injury

To justify the "extraordinary" remedy of imposing a stay pending appeal, Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025), LUMA, as the movant, bears the burden of demonstrating that implementation of the district court's order presents more

---

[8]     Although LUMA argues that the Court should apply the likelihood of success factor on a "sliding scale" that takes into account the "magnitude of the harm LUMA faces, and the other equities involved" (Reply at 10), as the Court will explain shortly, LUMA has not demonstrated that it will be subject to any irreparable harm if the Actions are remanded to the Commonwealth Court.  Accordingly, the Court need not address the parties' dispute concerning the precise quantum of likelihood of success that is necessary for an applicant to prevail on a motion for a stay pending appeal.

than "some possibility of irreparable injury." Nken, 556 U.S. at 434; Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."). LUMA has not identified any irreparable harm that would arise from implementation of the Remand Order.

First, LUMA's assertion that it will be subjected to "wastefulness" in the event LUMA prevails in the Appeals does not point to irreparable harm. Mere litigation expenses do not constitute irreparable harm. See In re Essar Steel Minnesota LLC, No. 16-11626 (CTG), 2025 WL 974571, at *7 (D. Del. Apr. 1, 2025) ("Cliffs is not irreparably harmed solely by virtue of litigating this case in state court during a federal appeal."); see also In re Justs. of Sup. Ct. of P.R., 695 F.2d 17, 20 (1st Cir. 1982) (stating that the expenditure of litigation costs, "even substantial and unrecoupable cost[s]," generally does not constitute an irreparable injury).

Second, LUMA's assertion that it may lose a statutory right to a federal forum for the Actions assumes, with little or no supporting analysis, that LUMA will be prejudiced if the Actions are adjudicated in the Commonwealth's courts and that the Court will not be able to regain jurisdiction of the Actions in the event that LUMA prevails on appeal. LUMA has not alleged, much less proffered any substantial basis to conclude, that Puerto Rico's courts will not provide a fair and just resolution of the claims and defenses underlying the Actions, nor that this Court is more able to do so. Cf. Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."). The Actions concern the application of Commonwealth statutes to a contract executed by two Commonwealth governmental entities and governed by Commonwealth law. The Commonwealth's courts are

eminently qualified to adjudicate such issues.[9]  See Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995) ("Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the State." (quoting Hebert v. State of La., 272 U.S. 312, 316 (1926))).  Furthermore, on occasions when parties have argued that litigation has been remanded improperly, the First Circuit has repeatedly expressed confidence in the ability of district courts to retrieve improperly remanded cases from state courts through "general principles of comity, cooperation, and communication between state and federal courts."  New Hampshire v. 3M Co., 132 F.4th 556, 559 (1st Cir. 2025) (quoting Forty Six Hundred LLC v. Cadence Educ., LLC, 15 F.4th 70, 80 (1st Cir. 2021)); Girouard v. Wells Fargo Bank, N.A., No. 19-1197, 2022 WL 4592893, at *1 (1st Cir. Mar. 4, 2022) ("[W]e are confident that the district court can enlist the state court's cooperation and restore the action to its own docket.").[10]  A stay pending appeal therefore is not necessary to ensure that the ultimate outcome of the Appeals will not be "hollow."  (Stay Motions at 10 (quoting Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, No. 1:16cv534(JCC/IDD), 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016).)

Third, LUMA's analysis assumes that it has some prospect of success with

---

[9]    The FOMB Statement asserts that a judgment invalidating the Extension Letter would "violate both the currently certified fiscal plan for PREPA and Puerto Rico law, both of which require that PREPA be operated by a private operator."  (FOMB Statement ¶ 2.) Neither the Oversight Board nor any other party has asserted that the courts of Puerto Rico will not apply applicable law faithfully to resolving any such defenses.

[10]    Although LUMA speculates that the Commonwealth courts may be able to resolve the merits of the Actions before the appeals are resolved, LUMA elsewhere represents that the Appeals can be resolved "on an expedited schedule and in coordination with the DACO Appeal already set for oral argument on June 4, 2026."  (Reply at 14; see Stay Motions at 13 ("LUMA believes the cases should be considered at the same time by the First Circuit, and, accordingly plans to ask the First Circuit to expedite its appeal of the Remand Order and to coordinate that appeal with the Liability Waiver Appeal.").)

respect to both of the Appeals.  However, as the Court has explained above, appellate review of the Remand Order is statutorily barred with respect to the Commonwealth Action, and LUMA therefore has no likelihood of success in the Commonwealth Action Appeal.  Given that, at a minimum, the Commonwealth Action will proceed in Puerto Rico's courts, any alleged injury that LUMA will face as a result of proceeding in Puerto Rico's courts is unlikely to be ameliorated by granting a stay pending appeal with respect to the P3A/PREPA Action Appeal.

Accordingly, LUMA has not met its burden of demonstrating an irreparable injury that may be avoided by granting a stay pending appeal.

        C.        <u>Whether Granting the Stay Will Substantially Injure Other Interested Parties</u>

The Commonwealth and P3A contend that they would be injured by the delay of their abilities to exercise regulatory authority and enforce the Commonwealth's laws through the Actions.  In response, LUMA primarily argues that Plaintiffs should have sought judicial relief to invalidate the Extension Letter sooner.  (<u>See</u> Stay Motions at 11 ("Plaintiffs cannot claim to be harmed by a stay pending appeal when they delayed bringing suit for over three years.").)  LUMA also contends that the issues in the Appeals could be resolved in a fairly expeditious manner, either through expedited appeals or because certain related issues have been briefed in a pending appeal concerning the Puerto Rico Department of Consumer Affairs ("DACO").

LUMA's arguments do not demonstrate that a stay pending appeal is warranted. At most, they undercut some of the Commonwealth's and P3A's arguments as to why a stay pending appeal may be inappropriate.  Furthermore, it is doubtful that the appeal concerning the DACO litigation will materially affect these appellate proceedings because the DACO appeal does not concern the forum selection clause issue that is the subject of the P3A/PREPA Action Appeal.

In any event, because the Court has already concluded that LUMA has not established irreparable harm and that there is not a meaningful likelihood of success with respect to the Actions, the Court need not address this aspect of the Stay Motions any further. Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs., No. 26-1321, 2026 WL 1379424, at *7 (1st Cir. May 16, 2026) ("Given the defendants' failure to meet their burden as to the critical 'likelihood of success' factor, we do not see how the defendants' arguments as to the three remaining Nken factors suffice to support their request to stay the preliminary injunction.").

### D. Where the Public Interest Lies

With respect to the public interest, LUMA's arguments focus almost entirely on the potential consequences if Plaintiffs ultimately prevail on the merits of the Actions, but do not provide any argument as to why that outcome would be avoided if the Court were to grant a stay pending appeal. (See, e.g., Stay Motions at 12 ("[T]he sudden judicial nullification of the contract by which LUMA quite literally 'keeps the lights on' in Puerto Rico would have a profound impact on the operation of the T&D System in Puerto Rico and consequently on the Puerto Rican people.").) LUMA asserts that the Court "may permit the Bondholders and the Oversight Board to avail themselves of their rights to participate and be heard" (Motion at 12), but it does not explain why those parties would not be similarly capable of participating in litigation in Puerto Rico's courts. More generally, LUMA has not alleged any specific prejudice that will occur as a result of permitting Puerto Rico's courts to adjudicate the legal and factual issues in the Actions, nor has it established that the courts of Puerto Rico are any less capable than this Court of fairly and competently adjudicating those issues.

Accordingly, consideration of the public interest does not provide support for the

relief sought in the Stay Motions.

CONCLUSION

For the foregoing reasons, the Stay Motions are denied.  The Court, however, grants a further stay of its order remanding the above-captioned adversary proceedings to permit LUMA an opportunity to seek a stay pending appeal from the First Circuit.  Accordingly, the Clerk of Court is directed to effectuate the remand of each of the above-captioned adversary proceedings twenty-one (21) days from the date of this Order, and thereafter to close each of the adversary proceedings.  This Memorandum Order resolves Docket Entry No. 51 in Adv. Proc. No. 25-00061 and Docket Entry No. 70 in Adv. Proc. No. 25-00062.

SO ORDERED.

Dated:  June 1, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge